**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

**UNITED STATES OF AMERICA,**

    Plaintiff,

VS.                                                                                                          No. 2:20-CR-20200-SHL

**BRIAN WHEELER,**

    Defendant.

**MOTION TO SUPPRESS**

    **COMES NOW** the Defendant, Brian Wheeler, by and through counsel, Michael E. Scholl, and moves this Honorable Court to Suppress evidence seized from 2622 Burns Avenue on or about February 25, 2020. Wheeler will submit that the seizure of the evidence from this address violated his Fourth Amendment rights under the United States Constitution because: (1) officers unlawfully entered the residence; (2) officers exceeded the scope of the search permitted by searching on, under, and behind furniture in the home; (3) evidence seized on, behind, and under a the residence a chair in a bedroom was not in plain view; and (4) the evidence seized on, behind, and under the chair was not of an incriminating nature as to be immediately apparent. In addition to the suppression of evidence obtained in, under, and behind the chair, all evidence obtained from the subsequent execution of the search warrant at the residence should be suppressed because they are fruits of the unlawfully seized evidence. In support of this Motion, Wheeler would state as follows:

1

1. A grand jury returned a five-count indictment on November 11, 2020. Count one charged Wheeler with "unlawfully, knowingly, and intentionally possess with the intent to distribute in excess of 50 grams of methamphetamine." Counts two and three charged Wheeler with knowingly possessing firearms in furtherance of the drug trafficking crime as charged in Count one in violation of 18 U.S.C. § 924(c). Counts four and five charged Wheeler with violating 18 U.S.C. § 922(g)(1). The indictment resulted from the seizure of evidence from Wheeler's residence on or about February 25, 2020.

2. On February 25, 2020, at approximately 3:40 P.M., the U.S. Gulf Coast Regional Task Force along with Memphis Police Department officers were at 2622 Burns Avenue in Memphis, TN to execute an arrest warrant on Wheeler for Aggravated Child abuse and Child Abuse and Neglect.

3. While at the scene, officers observed a Silver BMW parked in the driveway that was registered to Wheeler.

4. Officers then allegedly knocked and announced and received no response from within the residence. Additionally, there was no response of any nature to indicate Wheeler was within the home.

5. Upon receiving no response, officers made entry into the home in an attempt to locate Wheeler.

6. The lights inside the home were off at the time officers made entry.

7. During the course of the search for Wheeler, officers entered the northwest bedroom of the home. Upon making entry, officers allegedly saw incriminating objects located in, behind, and under a massage chair in this room.

8. Officers allegedly observed in the massage chair a plastic jar containing plastic bags with a green leafy substance that was believed to be marijuana. Also, in the massage chair, officers allegedly observed a white bag containing an unknown brownish substance and a non-prescription bottle containing 46 pills with "M Amphet Salts 20mg" imprinted on them. Officers later determined the pills were Amphetamine by using drugs.com. Officers located two open boxes of sandwich baggies under the massage chair and a digital scale behind the massage chair.

9. Officers also allegedly observed a vacuum sealer machine in the living room.

10. Upon observing the above objects, officers obtained a search warrant for the residence to locate additional drugs and/or guns.

11. During the execution of the search warrant, officers located additional incriminating drugs and guns. Detective Carruth searched inside a white bag that was in the same massage chair that officers originally searched in, under, and behind prior to obtaining the search warrant. Inside the white bag, Detective Carruth located a larger bag of marijuana and four plastic ziplock bags with a brown powder substance within the white bag. Two of the ziplock bags were labeled "Gothic," and one was labeled "Kratom Golden strain."

12. In a home recording studio in the garage, Detective Carruth located a blue shoe box and a clear plastic box. The clear box allegedly contained marijuana and the blue box allegedly contained meth. Furthermore, Detective Carruth discovered a gun case that contained two guns. Detective Carruth also discovered a brief case containing marijuana in the garage.

13. Detective Criner located a plastic bag containing additional marijuana in a crawl space above the garage.

14. Wheeler was never located in the residence.

15.     Detective Carruther also located a plastic bag filled with 19 Alprazolam pills sitting on the living room coffee table during the execution of the search warrant.

## ARGUMENT

### I.     Police Unlawfully Seized Evidence from 2622 Burns Avenue

The Fourth Amendment provides that individuals have the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. Amend. IV. Generally, a search will be found reasonable where the search is supported by a warrant based on probable cause, absent an exception.  *Kentucky v. King*, 563 U.S. 452, 459 (2011).  The plain-view doctrine is an exception to the general rule that an officer must have a warrant to seize personal property.  Officers may seize property without a warrant if the following elements of the plain-view doctrine are satisfied: "(1) the item must be in plain view; (2) the item's incriminating nature must be immediately apparent; (3) the item must be viewed by an officer lawfully located in a place from which the object can be seen; and (4) the item must be seized by an officer who has a lawful right of access to the object itself."  *United States v. Jenkins*, 124 F.3d 768, 774 (6th Cir. 1997) (citing *Horton v. California*, 496 U.S. 128, 134 (1990)).

Evidence derived from 2622 Burns Avenue during the execution of his arrest warrant should be suppressed because the seizure was unlawful.  The plain-view doctrine is not applicable in this instance because (1) police unlawfully entered the residence; (2) police exceeded the scope of their search for Wheeler by looking behind, under, and in a massage chair located in the northwest bedroom of the residence; (3) evidence seized from under, behind, and in the massage chair was not in plain view; and (4) even if the evidence under, behind, and in the massage chair was in plain view, it's incriminating character was not immediately apparent.  As such, all evidence derived

4

from inside the residence should be suppressed.   This includes any and all evidence obtained from the search warrant that relied on evidence seized from the massage chair.

>    A.    **Police Unlawfully Entered 2622 Burns Avenue Because They Did Not Have Reason to Believe that Wheeler was Inside.**

Officers were not lawfully in a position to view evidence in the massage chair because they were unlawfully present within the home.   Courts have long recognized the protections afforded to individuals within the confines of their own homes or dwellings.   The Supreme Court in *Payton v. New York* held that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." 445 U.S. 573, 603 (1980).   Therefore, in order for the standard in *Payton* to be applicable, there must be a reason to believe that (1) the suspect lived in the residence and (2) could be found within at the time of entry.   *See United States v. Hardin*, 539 F.3d 404, 421-23 (6th Cir. 2008); *United States v. Pruitt*, 458 F.3d 477, 482 (6th Cir. 2006).

The Circuit Courts are split on whether the "reason to believe" language from *Payton* "requires a probable cause standard or some lower level of suspicion that a suspect is at a home." *United States v. Baker*, 976 F.3d 636, 642 (6th Cir. 2020).   The Sixth Circuit has not firmly provided what standard is applicable, but strongly favors the adoption of a probable cause standard.   *See Hardin*, 539 F.3d at n. 6.

Regardless of whether the standard should be probable cause or a lower standard, officers in this instance failed to meet even the minimum standard.   Alternatively, if the Court finds that officers met the minimum standard, the Court should find that officers did not meet the probable cause standard to believe Wheeler was within the dwelling at the time officers entered.

5

### 1.     Officers Did Not Even Satisfy the Lower Level of Suspicion to Believe Wheeler Was Inside the Home at the Time of Entry

In this instance, police only relied on the fact that a vehicle registered to Wheeler was outside the home for their belief that he was inside at the time officers executed the arrest warrant. This is not sufficient to meet even the lower reasonable suspicion standard.

Cases where the court held that police did have a reason to believe a suspect was within the home provides support that police failed to satisfy the standard in this instance. In these cases, police relied on far more information in making the determination that a suspect was within a residence. *See U.S. v. Winkler*, 2008 WL 5136463, at 1* (E.D. Tenn. Dec. 4, 2008) (sufficient evidence that suspect was home where the car known to be driven by suspect was parked outside *after working hours*). *See also United States v. Route*, 104 F.3d 59, 62-63 (5th Cir. 1997) (reasonable belief found where police heard sound of television from inside the house plus observed a car in the driveway); *United States v. Lauter*, 57 F.3d 212, 215 (2d Cir. 1995) (reasonable belief found where police received a tip from an informant that suspect was unemployed and liked to sleep late); *United States v. Edmonds*, 52 F.3d 1236, 1248 (3d. Cir. 1995) (reasonable belief found where police conducted surveillance in front of residence early in the morning when one likely would not have left yet and did not observe anyone leave during the course of surveillance); *United States v. Thomas*, 429 F.3d 282, 286 (D.C. Cir. 2005) (reasonable belief found where police executed arrest warrant early in the morning).

Here, police did not have reason to believe that Wheeler was within his residence at the time they executed the arrest warrant. Police only rely on the fact that a vehicle registered to Wheeler was in the driveway for their belief that he was home at the time they made entry. This alone is not enough to find reasonable belief that he was home, especially when considering the totality of

the circumstances. For one, the warrant was not executed early in the morning when one normally would be presumed to be home. *See U.S. v. Lovelock*, 170 F.3d 339, 343 (2d Cir. 1999). Instead, officers executed the warrant around 3:45 P.M. on a Tuesday. Second, no officer conducted surveillance beforehand to determine whether Wheeler was present in the home. Third, the inside of the residence was completely dark because the lights were off. Fourth, there was no response when police knocked before entering. Fifth, police did not hear anyone or a television prior to making entry into the home. Sixth, police did not receive any credible or anonymous tips that Wheeler was home.

Therefore, Wheeler respectively request this Court to grant his Motion and suppress all evidence obtained from 2622 Burns Avenue.

### 2. This Court Should Adopt a Probable Cause Standard and Find that Officers Did Not Have Probable Cause to Believe Wheeler Was Within His Home

There is a recognized circuit split regarding the applicable standard to be applied when police execute an arrest warrant at a suspect's home. *See United States v. Pruitt*, 348 F.3d 477, 482 (6th Cir. 2006). The majority of the circuit courts apply a lesser reasonable belief standard. However, many of the circuit courts lacked sufficient explanation for their interpretation of why the "reason to believe" language as used in *Payton* should be interpreted to mean a lesser standard than probable cause. *See United States v. Vasquez-Algarin*, 821 F.3d 467, 474 (3d. Cir. 2016) (stating that the "D.C., First, Second, and Tenth Circuits have determined that reasonable belief requires less than probable cause . . . [b]ut those courts have offered little by way of explanation for this interpretation.").

Currently, the Third and Nineth Circuit require officers to have probable cause that an individual is within his home at the time an arrest warrant is executed. *See id*. at 474-75; *United*

7

*States v. Gorman*, 314 F.3d 1105, 1111 (9th Cir. 2002).   The Sixth Circuit in *U.S v. Hardin* dodged the issue of what is the applicable standard.   *See Hardin*, 539 at 426 ("[W]e conclude that whether *Payton* involves a probable-cause standard or a lesser reasonable-belief standard remains an open question in our circuit.").   However, the court in *Hardin* explicitly provided support for the adoption of a probable cause standard in a footnote.   *Id.* at n. 6.

The Supreme Court in *Payton v. New York* addressed the issue of whether police can make a warrantless and nonconsensual entry into a suspect's home to make a felony arrest.   445 U.S. at 573.   The Court held:

> If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.

*Id.* at 602.   Courts since *Payton* interpret whether the "reason to believe" language used in *Payton* is meant to require officers to have probable cause that a suspect is within or a lower standard of reasonableness.

The Sixth Circuit has not decided what standard is applicable, but strongly favors adopting a probable cause standard.   In *U.S. v. Hardin*, the Sixth Circuit was faced with the issue of what standard applied.   In that case, the government cited *U.S. v. Pruitt* as the controlling authority because the *Pruitt* court stated that "a lesser reasonable belief standard, and not probable cause, is sufficient to allow officers to enter a residence to enforce an arrest warrant."   *Pruitt*, 458 F.3d at 482.   In the alternative, the defendant in *Hardin* cited *U.S. v. Jones* as the controlling authority on the issue.   In *Jones*, the court stated, "[i]t is . . . fundamental that government officials cannot invade the privacy of one's home without probable cause for the entry."   *United States v. Jones*,

8

641 F.2d 425, 428 (6th Cir. 1981). The Court in *Hardin*, recognizing a conflict among the authorities cited, went into explicit detail to justify their finding that *Pruitt* and *Jones* are merely dicta when it comes to determining the applicable standard to enter a home with an arrest warrant. Furthermore, the court in *Hardin* dodged the issue because the officers did not form a reasonable belief that the defendant was present in an apartment. As such, there was no reason for the court to determine whether a probable cause standard is applicable even though the court provides support for adopting a probable cause standard. *Hardin*, 539 F.3d at 416, n. 6.

This Court should find that a probable cause standard is required for an officer to have reason to believe a suspect is within his home when executing an arrest warrant for several reasons. First, the rationale *Payton* applied to support its holding also supports the interpretation that officers must have probable cause a suspect is within. Second, the Court in *Payton* implicitly meant for a probable cause standard to apply. Third, the Supreme Court's subsequent decision in *Maryland v. Buie,* 494 U.S. 325 (1990) used "probable cause" language and not "reason to believe" language. 494 U.S. 325, 332-33 (1990).

First, the higher standard of probable cause is needed to safeguard the interests and privacies associated with one's home as emphasized in *Payton*. The Supreme Court in *Payton* recognized that there really is no "substantial difference in the relative intrusiveness of an entry to search for property and an entry to search for a person." *Id.* at 589. Although the Court recognized that "the area that may legally be searched is broader when executing a search warrant than when executing an arrest warrant in the home," nonetheless "the difference may be more theoretical than real." *Id.* The Court explained:

> This difference may be more theoretical than real, however, because the police may need to check the entire premises for safety reasons, and sometimes they ignore the

9

>restrictions on searches incident to arrest.

*Id.* The requirement of an arrest warrant alone does not satisfy the safeguards the Court is trying to protect without also implementing a requirement that there is probable cause the suspect is within at the time officers make entry.

If a lower standard is applied, it is more likely police will find themselves in an unoccupied home upon making entry. This gives rise to a greater risk that officers will exceed the scope of the search for the suspect within the home. In doing so, a lower standard will encourage police officers to make entry into an otherwise unoccupied home to search the *entire* premises in the hope of finding incriminating evidence in "plain view". But a search effectuated based on probable cause that a suspect is within will likely result in a higher probability of affirming that a suspect is within the home and any further search through the premises will be required to cease upon seizing the suspect, absent an exception. In a practical sense, a probable cause standard will reinforce the Court's decision in *Payton* by implementing safeguards to maintain the narrowness of the search permitted by officers in executing an arrest warrant in one's home.

Second, interpreting the language used in *Payton* provides more evidence that a probable cause standard is required. Before addressing the precise issue before the Court, Justice Stevens provided a brief overview of the issues that the Court would not be addressing because they were not raised or of issue. *Id.* at 582-83. The Court stated the following:

>We also note that in neither case is it argued that the police lacked probable cause to believe that the suspect was at home when they entered.

*Id.* at 583. In doing so, the court is implicitly recognizing that officers must have probable cause that a suspect is at home at the time they enter. Also, in his dissenting opinion, Justice White stated in a footnote that "under today's decision, the officers apparently need an extra increment

10

of probable cause when executing the arrest warrant, namely, grounds to believe that the suspect is within the dwelling." *Id.* at 616 n. 13 (White, J., dissenting).

Third, a subsequent Supreme Court decision since *Payton* used "probable cause" language and not the "reason to believe" language. The Supreme Court in *Maryland v. Buie* considered whether officers executing an arrest warrant could also perform a protective sweep of the residence. 494 U.S. at 325. Justice White states the following in the majority opinion: "Possessing an arrest warrant and *probable cause* to believe Buie was in his home, the officers were entitled to enter and to search anywhere in the house in which Buie might be found." *Id.* at 332-33 (emphasis added). In this instance the Supreme Court recognizes that the standard is probable cause and not something less.

In summary, the only rationale for finding a standard less than probable cause is by focusing on the exact language the *Payton* Court used in requiring a "reason to believe." However, the rationale and implicit interpretation of the Court's decision provides otherwise. The most efficient way to safeguard the privacies associated within one's home is to require police to have probable cause that a suspect is within at the time an arrest warrant is executed. To hold the opposite will risk intrusive and expansive searches throughout a home by officers while the homeowner is not present to maintain a watchful eye as to the constitutionality of the search unfolding. As such, this Court should find that the officers did not have probable cause to believe Wheeler was within the residence when they entered.

### B. Police Were Not Lawfully in a Position to Search for Wheeler In, Behind, and Under a Massage Chair

If officers were lawfully present in the home, then the officers conduct of looking behind, under, and in the massage chair in the northwest bedroom constitutes an unlawful search because

11

it exceeds the scope of the officers' lawful presence. The execution of an arrest warrant in an individual's home only allows officers to search those places where the suspect might reasonably be found. *Maryland v. Buie*, 494 U.S. 325, 332-33 (1990). "If the scope of a search exceeds that permitted by the terms of a validly issued warrant . . . the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990). Furthermore, "the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating emerges." *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971).

Here, officers exceeded the scope of the lawful search for Wheeler in the home. Upon entering the bedroom, officers could quickly dispel that Wheeler was not present in, under, nor behind the massage chair. However, officers investigated the chair further and observed a jar containing plastic bags of a green leafy substance, a white bag containing plastic bags of an unknown brown substance, a nonprescription pill bottle containing 46 amphetamine pills, a digital scale, and two boxes of ziplock bags. Officers exceeded the scope of their search by searching on, under, and behind the massage chair after already affirming that Wheeler was not in the room. The conduct of the officers effectively created a new search for which they did not have a warrant. There is no justification for why officers searched the area in and around the massage chair other than to locate other incriminating objects. As such, the evidence obtained therefrom should be suppressed along with the fruits seized as a result of the subsequent execution of a search warrant that relied on the evidence obtained from the chair.

### C. The Evidence In, Behind, and Under the Massage Chair Was Not in Plain View.

The plain-view doctrine is not applicable because evidence found sitting in, under, and behind the massage chair in the bedroom was not in plain view. The incriminating evidence was

sitting in the massage chair in a manner that was not in plain view. Officers, in searching the dark bedroom, would have to manipulate items in the chair to observe the incriminating evidence because there were several other non-incriminating objects cluttering the chair. Additionally, evidence was found in a white bag that was sitting in the chair. The incriminating evidence in the bag was not in plain view. Officers would have to handle or manipulate the bag to observe the contents within. As such, the evidence seized from the massage chair was not in plain view and should be suppressed.

### D. Evidence Found in the Massage Chair Is Not of a Character That is Immediately Incriminating

It was not immediately apparent that the evidence found in the massage chair was criminal in nature. As provided previously, in order for evidence to fall within the plain-view exception to the warrant requirement, the evidence must be "of a character that is immediately incriminating." *United States v. Roark*, 36 F.3d 14, 18 (6th Cir. 1994). Whether an item is immediately incriminating "does not demand an 'unduly high degree of certainty;' rather, a plain view seizure is 'presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.'" *United States v. Calloway*, 116 F.3d 1129, 1133 (6th Cir. 1997) (quoting *Texas v. Brown*, 460 U.S. 730, 741-42 (1983)).

In determining whether an item's incriminating nature is immediately apparent, the Sixth Circuit advises lower courts to look at three factors. *United States v. McLevain*, 310 F.3d 434, 441 (6th Cir. 2002). Neither factor is "necessary but each of which is instructive." *United States v. Garcia*, 496 F.3d 495, 510 (6th Cir. 2007). The factors are: "(1) a nexus between the seized object and the items particularized in the search warrant; (2) whether the 'intrinsic nature' or appearance of the seized object gives probable cause to believe that it is associated with criminal

13

activity; and (3) whether the executing officers can *at the time* of discovery of the object on the facts then available to them determine probable cause of the object's incriminating nature." *Id.* (emphasis in original). Additionally, an "object's incriminating nature is not immediately apparent if it 'appears suspicious to an officer but further investigation is required to establish probable cause as to its association with criminal activity.'" *Id.* (quoting *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 555 (6th Cir. 2003)).

Officers found the following sitting in a chair in the bedroom: (1) a non-prescription bottle containing 46 orange pills imprinted with "M Amphet Salts 20mg"; (2) a plastic jar containing plastic bags filled with a green leafy substance that was believed to be marijuana; and (3) a white bag containing a Ziploc bag of an "unknown brownish substance." However, these items were not of a character to be immediately incriminating for the following reasons.

### 1. Non-Prescription Bottle Containing Amphetamine Pills

Officers allegedly found in the massage chair a non-prescription bottle containing 46 orange bills which had "M Amphet Salts 20mg." imprinted on them. The incriminating nature of the pills was not readily apparent to officers at the time of their discovery.

As for the first factor, there is no nexus between the seized pills and the arrest warrant. Officers were at Wheeler's residence to locate him, not to search for pills or other drug paraphernalia.

Second, the intrinsic appearance of the pills in the bottle would not provide probable cause that it is associated with criminal activity. *See United States v. Wheeler*, 2020 WL 2029959, at \*9 (E.D. Tenn. April 6, 2020) (finding that a pill bottle with a partially ripped label would not provide probable cause that it is associated with criminal activity without further investigation*); Mason v.*

14

*City of Warren Police Dept.*, 2011 WL 5025841, at *6 (E.D. Mich. Oct. 21, 2011) ("[T]he association between illegal activity and a pill bottle merely observed generally depends on something more than the presence of a pill bottle alone."). Without conducting further investigation, officers could not determine what kind of pills were found and whether those pills were illegal in the possession of Wheeler.

Third, officers could not determine the incriminating nature of the pills *at the time* they found them. The affidavit in support of Wheeler's arrest warrant for the drugs and guns discovered in the home provides that the pills were later found to be amphetamine after using drugs.com. This shows that officers, in the moment, did not know the incriminating nature of the pills and had to conduct a further investigation to identify the content of the pills.

Therefore, based on the foregoing factors, it was not immediately apparent that the pills were of an incriminating nature at the time of their discovery. As such, evidence of the pills and the evidence derived from the discovery of the pills should be suppressed.

        **2.    Marijuana**

Upon entry and subsequent search of the bedroom, officers allegedly located a plastic jar containing plastic bags of a green leafy substance sitting in the massage chair. Based on how the marijuana was packaged, there was not sufficient probable cause for the officers to believe the bags contained marijuana. First, there is no nexus between the arrest warrant and the marijuana seized. Officers were present to seize Wheeler and not search for drugs. Second, the intrinsic nature of how the marijuana was packaged did not give officers probable cause that it contained marijuana. The baggies of marijuana were allegedly found wrapped in individual baggies and those baggies were contained within a plastic jar. Based on the layers of plastic covering the

15

marijuana, it would not be apparent that there was drug paraphernalia within. *See United States v. Guzman-Cornejo*, 620 F.Supp.2d 917, 922 (N.D. Ill. 2009) (holding drugs found inside an opaque plastic bag that was inside another plastic bag would not be immediately apparent). Additionally, officers failed to report any odor of marijuana enumerating from the plastic jar. Third, officers could not determine the incriminating nature of the marijuana until after a lab test was conducted. As such, it was not immediately apparent to officers that the plastic jar contained marijuana without officers conducting further investigations. Therefore, evidence of the marijuana and the evidence derived from the discovery of the marijuana should be suppressed.

### 3. Heroin

It was not readily apparent that the white bag sitting in the chair contained heroin. Again, there is no nexus between the heroin seized from inside the white bag and the arrest warrant. Furthermore, under the second factor, the intrinsic nature of the unknown brown substance did not provide officers with probable cause to associate it with heroin. Officers could not determine what the substance was at the time they allegedly saw it through a white bag. Additionally, the third factor weighs heavily in Wheeler's favor. Officers did not know at the time of discovery that the object was of an incriminating nature. The incriminating nature of the brown substance was not discovered until officers conducted further investigation after obtaining a search warrant for the residence. Subsequent to obtaining the search warrant, officers searched the inside of the white bag that was sitting in the chair. At this moment, officers extracted the four bags containing the unknown brown substance that was located in the white bag. Two of the bags were labeled Gothic, one bag was labeled Kratom Golden strain, and the last bag was unlabeled. It was not until officers observed the labels on the bags that the incriminating nature of the unknown

16

substance became apparent. Therefore, evidence of the unknown brown substance and the evidence derived from the discovery of the unknown brown substance should be suppressed.

**WHEREFORE DEFENDANT PRAYS** that this Honorable Court grant this Motion and Suppress all evidence obtained from 2622 Burns Avenue. This includes all evidence obtained as a result of the search warrant issued that was based on illegally seized items sitting in, under, and behind a chair in the northwest bedroom of the residence and for such further general relief as the court deems necessary.

Respectfully submitted,

s\Michael E. Scholl  
MICHAEL E. SCHOLL (16284)  
200 Jefferson Avenue,  
Suite 1500  
Memphis, Tennessee 38103  
(901) 529-8500

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a true and exact copy of the foregoing document has been served on Assistant United States Attorney, Jennifer Musselwhite at 167 North Main, Suite 800, Memphis, Tennessee 38103, via electronic delivery, on this the 22nd day of January, 2021.

s/ Michael E. Scholl  
MICHAEL E. SCHOLL