**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cr-20200-SHL |
| | ) | |
| BRIAN WHEELER, | ) | |
|     Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant's Motion to Suppress, filed January 22, 2021.  (ECF No. 18.)  Defendant seeks to suppress all evidence seized during a search on February 25, 2020, arguing that the evidence is the product of an illegal search.  (ECF No. 18.)  Specifically, Defendant seeks to suppress evidence of illegal drugs, including methamphetamine, and firearms found in his home during the search.  Defendant's Motion avers that there was no "reason to believe" that he was in his home at the time police entered to effectuate an arrest warrant.  Thus, Defendant argues, any fruits of the search should be suppressed.  Even if the officers' entry was proper, he argues that the evidence was not in plain sight.

The Government responded on February 10, 2021, arguing that the police entry into Defendant's home was valid.  (ECF No. 23.)  It contends that there was reason to believe that Defendant was in the home, thus allowing law enforcement to enter based on the valid arrest warrant, and the evidence was in plain sight.  (ECF No. 23.)

The Court held an evidentiary hearing on March 23, 2021.  (See ECF No. 27.)  The Government called Detective Brian Cofer of the Memphis Police Department, U.S. Marshal Shane Fisher and Andrew Criner of the Shelby County Sheriff's Office.  (ECF No. 27.)  The Government also submitted the arrest warrant and search warrant from February 25, 2020, the

day of the search, as evidence, along with three photos of evidence found inside the home.  (ECF No. 28.)  Defendant submitted no evidence.  (ECF No. 28.)

For the reasons outlined below, Defendant's Motion to Suppress is **GRANTED**.

FACTS

Based on the evidentiary hearing, including the exhibits submitted, the Court finds the following facts.  On February 25, 2020, police obtained a warrant for Defendant's arrest for aggravated child abuse, among other offenses.  That afternoon, a task force dedicated to arresting those accused of violent crimes went to the address listed on the warrant, 2622 Burns Avenue, Memphis, Tennessee.[1]  The task force, consisting of about eight officers from different law enforcement agencies, investigated outside the home to determine if Defendant was inside.  The lights were off, but Defendant's BMW was parked in the driveway near the street, along with at least two other vehicles.  (Hr'g Tr., U.S. Marshal Fisher Test. 43 ("The only one for sure that matched up to Mr. Wheeler I believe was the BMW.").)

According to officer testimony at the evidentiary hearing, an unidentified officer asked a neighbor if Defendant was home.  One witness testified that the neighbor replied that if Defendant's BMW was there, he was "usually" there.  (See Hr'g Tr. 30.)  Another witness recalled that the neighbor said, "if that silver car is there then he's there."  (See Hr'g Tr. 22.)  However, none of the three testifying officers could remember who spoke to the neighbor, who the neighbor was or which house he or she lived in.  Further, although the police reports included information describing why the officers thought Defendant could be inside the home, the

---

[1] Defendant had provided this address to his daughter's school shortly before the search, paid utilities at the address, and parked his vehicle outside—both officers questioned about this information testified that they verified the information before entering the home.  (Hr'g Tr. 14, 30, 62.)  Based on these observations, the officers believed he lived at the address.  Defendant does not appear to contest that the address was his residence.

information allegedly obtained from the neighbor was not mentioned.  Nor was it mentioned in the Government's initial Response to Defendant's Motion, (ECF No. 23)—it was reported for the first time at the evidentiary hearing.

The task force officers decided to enter the home to search for Defendant at about 3:45 PM.  They knocked and announced, but, receiving no response, they breached the door and entered.  The home was dark and cluttered.  The officers did not find Defendant, but they did see evidence of marijuana and other controlled substances.  In searching for Defendant, they observed marijuana on a chair in a bedroom of the house.  Behind the chair, they saw a scale, plastic baggies and a non-prescription pill bottle.  Based on their observation of the marijuana, they obtained a search warrant and searched the home, finding additional drugs, cash and two firearms.

Because the potential role of the information allegedly obtained from the neighbor did not arise until the evidentiary hearing, the Court permitted the Parties to submit additional briefing on that issue.  Defendant did so on April 6, 2021, (ECF No. 30), and the Government did so on April 16, 2021, (ECF No. 31).  Based on all of the briefing and the evidentiary hearing, the Court **GRANTS** Defendant's Motion, concluding that officers did not have a reason to believe Defendant was in the home when they entered.  However, if the Court had not granted the Motion on this basis, it would not have suppressed the evidence found once the officers entered the house because it was found in plain sight.

## ANALYSIS

Defendant argues that the evidence should be suppressed for two reasons: First, he argues that officers did not have reason to believe that he was in the home, which is required before they may enter with only an arrest warrant.  Second, he argues that the officers improperly looked in

3

and around a chair in the bedroom of the home, and the evidence they found was not immediately incriminating or truly in plain sight.  The Government responds that the officers had reason to believe Defendant would be in the home and the evidence was in plain sight.  The Court concludes that the officers did not have reason to believe Defendant would be in the home before they entered, and on that ground alone the evidence must be suppressed as unconstitutionally obtained.  However, the Court also addresses Defendant's second argument that the evidence was not in plain sight and finds it without merit.

I.  **Officers Did Not Have Reason to Believe**[2] **that Defendant Was in the Home.**

To enter a home with only an arrest warrant, not a search warrant, officers must have reason to believe (1) the suspect lives in the home and (2) the suspect is in the home at the time of entry.  See Payton v. New York, 445 U.S. 573, 603 (1980) ("[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.").  Here, Defendant does not contest that the officers had reason to believe that he lived in the home.  (ECF No. 23 at PageID 61.)  Thus, the Court focuses on the second element, whether the officers had reason to believe that he was inside the home at the time of their entry.

A.  **Anonymous Tip**

The Government argues that the officers had reason to believe Defendant was in the home based partially on the alleged tip from the neighbor.  At a suppression hearing, the district court is the finder of fact, responsible for making credibility determinations.  See Amadeo v.

---

[2] Both parties argue as to whether the level of suspicion required to enter the home should be "reason to believe" or probable cause.  However, because the Court finds that the officers did not have even the lower level of suspicion, reason to believe, it need not reach this unsettled question.  Cf. United States v. Hardin, 539 F.3d 404, 416 n.6 (6th Cir. 2008) (noting that there is no binding Sixth Circuit precedent on this issue).

Zant, 486 U.S. 214, 223 (1988). Here, given the evidence offered, the Court does not consider the tip from the neighbor to be sufficiently credible, and thus it will not include the tip in its reasonable belief analysis. Cf. United States v. Matlock, 415 U.S. 164 (1974).

The Court considers several factors in deciding to exclude evidence from consideration. Cf. id. (finding lower court's decision to exclude evidence to be error). Specifically, it considers whether: (1) it is "quite satisfied" that the statement in fact had been made, (2) the record raises "serious doubts" regarding truthfulness, (3) the statement was corroborated by other evidence, (4) there was reason to distrust the evidence, (5) the declarant was available for cross-examination, and (6) the statement was against penal interest. Id. at 175–76. Exclusion of the evidence based on admissibility rather than credibility is not appropriate. Id. Here, regardless of admissibility under the rules of evidence, the Court excludes the evidence of the tip from consideration based on its credibility.

The alleged tip lacks sufficient indicia of reliability, given the uncertainties as to the officer who the statement was made to, the person who uttered it, the lack of corroboration and the fact that no one could be adequately cross-examined regarding the content or basis for it. First, the tip was not mentioned in the police reports, although the reports detail the other reasons officers may have believed Defendant was in the home. Nor was the tip brought up in the Government's written response—rather, it was mentioned for the first time during the hearing. Second, none of the officers could identify the neighbor who allegedly gave the tip, his or her address, how he or she knew Defendant or any detail about him or her. Given this lack of information, the neighbor was not available for cross examination. Third, none of the officers could remember who spoke to the neighbor, although their task force was relatively small. Each officer remembered being told that a neighbor said Defendant was home or likely home, but

none of the officers could remember who told them or how they obtained the information. Thus, the officer who allegedly took the statement was not available for cross-examination. Finally, the alleged statement by the neighbor differed slightly when recounted by the two witnesses who repeated it at the hearing. Based on these findings, the Court concludes that the alleged tip from the unidentified neighbor to the unidentified officer does not carry sufficient credibility to be considered in this analysis.

**B. <u>Other Bases for Reasonable Belief</u>**

Excluding the tip, the Government's argument that the officers had reason to believe Defendant was in the home is based on: (1) Defendant's car parked in the driveway, along with other cars; and (2) the time of day, around 3:45 PM. The Court must evaluate the "common sense factors" contributing to the suspicion that Defendant was in the home as part of the totality of the circumstances and determine if reasonable belief is established. <u>United States v. Pruitt</u>, 458 F.3d 477, 482 (6th Cir. 2006). Here, the officers' observations are not sufficient to establish a reasonable belief that Defendant was in the home at the time of the entry.

The presence of Defendant's car in the driveway, among other cars, is a relevant factor, but it cannot establish a reasonable belief that Defendant was in the home on its own. To reach a reasonable belief, there should be "recent, eyewitness evidence" or "even conduct by the suspect." <u>See</u> <u>United States v. Hardin</u>, 539 F.3d 404, 421 (6th Cir. 2008). A car parked outside a residence may establish reasonable belief where officers have surveillance or other information to add to the fact of the presence of the car, or where they conduct the search early in the morning or late at night, when it is reasonable to believe one would be home. <u>See, e.g.</u>, <u>United States v. Buckner</u>, 717 F.2d 297, 298 (6th Cir. 1983). Here, however, the officers entered a dark home on a weekday afternoon, with no sign of anyone inside, and no additional information

regarding where Defendant would be on a weekday afternoon.  The officers had no credible information about how many cars Defendant had, which car he drove most frequently, whether he drove a car to work or whether he worked at all.  Considering the totality of the circumstances, the officers had no reason to believe that Defendant would be inside the home at the time of their entry.

Adding the time of day to the presence of the car does not change the outcome.  The Government argues that if Defendant worked in a school or bank, his workday would likely end around 3 PM, and he would be home by 3:45 PM.  However, the Government admits that the officers had no knowledge of what job Defendant had, if any, and thus they had no information that Defendant was home from work by 3:45 PM.  As Defendant argued, most people are not home on Tuesday afternoons, and there was no reason to think Defendant was any different.  (See ECF No. 18.)

Because the totality of the circumstances does not establish a reasonable belief that Defendant was in the home, the officers' entry with only an arrest warrant was a violation of Defendant's Fourth Amendment rights.  Thus, Defendant's Motion to Suppress is **GRANTED**.

## II.      **Once Police Entered the Home, the Evidence Was in Plain Sight.**

Although the improper entry is sufficient grounds to grant Defendant's Motion to Suppress, the Court will also address Defendant's argument regarding plain sight.  Defendant argues that the evidence used to obtain a search warrant[3] was not in plain sight, even if the entry were valid.

---

[3] The marijuana found served as the basis for the search warrant.  Defendant also argues that other contraband found in the bedroom was not in plain sight.  However, because it was not used to obtain the search warrant and was only seized after a valid search warrant was obtained, the other evidence found is not relevant to this Motion.

Defendant first argues that officers exceeded the scope of the arrest warrant by searching on and around a chair in the bedroom of the home, invalidating their search. While the officers only had an arrest warrant, not a search warrant, it was reasonable for them to scan the bedroom pursuant to their search for the suspect. As they did so, they were not required to shut their eyes to contraband in plain sight. See Horton v. California, 496 U.S. 128, 133 (1990). The marijuana sitting out in the open on a chair was in plain sight as officers entered the bedroom to search for Defendant. See Maryland v. Buie, 494 U.S. 325, 332-33 (1990).

Defendant further argues that because the room was dark, the chair was cluttered, and the marijuana was in two layers of clear plastic, it was not in plain sight or immediately incriminating. However, the evidence indicates that the marijuana was immediately discernable as contraband with the aid of a flashlight. (See ECF No. 23 (photo of marijuana as found).) The green leafy substance was clearly visible through the two layers of plastic. And the police properly used flashlights to search the dark home for Defendant. Thus, their use of flashlights to illuminate the room did not exceed the scope of their search pursuant to the arrest warrant. Because the evidence was in plain sight, Defendant's second argument fails.

## CONCLUSION

The Court finds that the officers did not have the required reasonable belief that Defendant was in the home at the time of the entry. See Payton v. New York, 445 U.S. 573, 603 (1980). Thus, the entry was a violation of Defendant's Fourth Amendment rights, and all evidence discovered as a result of the entry must be suppressed. Once the officers entered the home, the evidence was in plain sight. However, because the entry itself was invalid, Defendant's Motion to Suppress is **GRANTED**.

**IT IS SO ORDERED,** this 23rd day of April, 2021.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE